JUDGE BULLITT
delivered the opinion op the court:
Matthew Thompson, who died in 1839, devised a tract of land, in Clarke county, to M. N. Thomson, M. F. Thompson, Haynie Thomson, and W. I. Thomson, all of whom were infants; and directed his executors to rent out the land until the youngest of the devisees should attain the age of 21 years, and divide the rents between them; and to sell the land when the youngest should attain the age of 21 years, and divide the proceeds between them, or the survivors then living; and he appointed James L. and Sanford Thomson executors of the will, both of whom qualified in 1839, in the county of Clarke. James L. Thomson left Kentucky and ceased to act as executor in 1841 or 1842, and has continued to reside out of the State. The other executor, Sanford Thomson, has continued to the present time to act as executor in renting th'e land and in other matters. The youngest devisee became of age in the spring of 1859. Before that time, one of them, M. F. Thompson, died, whereby the right to the land and proceeds vested in the other three. On the 11th July, 1859, said James L. Thompson, “as one of the executors” of said Matthew Thompson, executed a deed to the appellants, purporting to convey to them an undivided third part of said land, which is described as the interest of Haynie Thompson therein; and the appellants executed their notes for the purchase money, payable to said James L. Thompson, who assigned the same to the ap-pellee, Lewis. When the notes fell due the appellants refused to pay them, upon the ground that they had discovered that James L. Thompson’s deed gave them no right to the land. Lewis then procured a deed from the devisee, Haynie Thompson, conveying to the appellants a third of said land, but they refused to accept the deed or pay the notes. Lewis then brought this suit, asking for a judgment against the appellants *271 for the amount of the notes, and for a sale of their interest in the land, to satisfy the same.
The appellants answered that they had obtained no title to the land, and, therefore, that the notes were without consideration; and made the answer a cross-petition against Lewis and the Thompsons, and asked for a rescission of the contract and for a canc|hnent of their notes.
Lewis filed a reply, insisting that the appellants had good title to the land, and also alleging that, when they executed the notes for the purpose of enabling Thompson to negotiate them, they signed and delivered to him a paper of which the following is a copy: ✓
“Clahke County, Ky., July 12, 1859.
We purchased a tract of land of J. L. Thomson, as executor of Matthew Thomson, dec’d., of 84£ acres, and gave our notes for it in two payments, and wre expect to pay them when they fall due. We have no offsets, nor will have, on those notes.
WM. D. STEVENSON,
A. STEVENSON,
F._J. WELLS.”
And that said paper was presented to him before he purchased said notes, and that he was thereby induced to purchase them.
.The court below rendered a personal judgment against the appellants for the amount of the notes, from which they appeal; whilst the appellee complains, upon a cross appeal, because the court failed to order a sale of a third of the land.
In our opinion, J. L. Thomson’s deed passed no title to the land. Whether or not, by ceasing to act, and by residing out of the State, he had vacated his office as executor, we need not decide. Ifhe had vacated the office, the power to sell devolved on the other executor. (Rev. Stat., chap. 37, art. 1, sec. 9.) If he had not vacated it, the power was joint, and both executors should have signed the deed. (Halbert vs. Grant, 4 Mon., 582.)
The notes given by the appellants were, therefore, without consideration; and the contract of purchase being a nullity, Lewis had no power to render it valid, without-the consent of *272 the appellants, by tendering to them the deed from Haynie Thomson, even if he coaid have conveyed a good title in fee.
But, in our opinion, the appellants are estopped from pleading in this case, that the notes are without consideration. The pleadings and evidence show that they executed and delivered to J. L. Thomson the paper before mentioned, to enable him to sell their notes, and that Lewis purchased» the notes upon the iaith of it. Though, in legal contemplation, a set-off is a different thing from a matter of defense, the distinction is not perhaps perfectly understood by many unprofessional men. And, in view of the purpose for which the paper was given to J. L. Thomson, and of its statements, that the appellants expected to pay the notes at maturity, and had no offsets and would have none against them, our opinion is tha.t they intended to produce the impression that they would present no defense to the notes,, and that Lewis had a right to regard the paper as so stating, in ’ substance. If the appellants, when they gave the paper to Thomson, contemplated a defense, in case the title should prove defective, they acted in bad faith in giving him'the paper, which, if such was their purpose, was delusive and designed to deceive and to enable Thomson to commit a fraud by getting a fair price for worthless notes. If such was their purpose, they should not be permitted to carry it into effect. The personal judgment against the appellants was therefore right.
We have said that the pleadings and evidence show that the appellants executed and delivered to J. L. Thomson the paper before mentioned, to enable him to sell their notes, and that Lewis purchased the notes upon the faith of it. These propositions being controverted by counsel, we will refer to the pleadings and evidence by which we regard them as established.
Section 588 of the Code declares that, '“where a writing, purporting to have been executed by one of the parties, is referred to in, and filed with a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial is begun.” The paper in question was referred to in, and filed with, Lewis’ reply, and its genuine *273 ness was not denied by the appellants. Moreover, the execution and delivery of it to J. L. Thomson were proved by Flanagan’s deposition, as we shall presently show.
The paper having been again referred-to in an amended petition of Lewis, the appellants, in an amended answer, denied that’it was given for the purpose of enabling Thomson to sell the notes, and no evidence was introduced to prove the purpose for which it was given. But such evidence was unnecessary. It must be presumed, prima facie at least, that it was given for that purpose, such being its apparent natural import. When the law presumes, prima facie, that an act was done with a certain intention, a denial of such intention is unavailing; the facts relied on to destroy the presumption must be stated. Thus, a denial by a married woman that she signed a note with the intent to bind her" separate estate, was held to be insufficient to throw upon the plaintiff the burthen of proving the intention. (Eastin vs. Fulwiler, Mss. Opin., Feb., 1857.) If the appellants did not execute the paper to enable Thomson to sell the notes, they should have shown for what purpose it was executed.
. Flannagan testifies, that J. L. Thomson stated to him, not only that he had obtained from the appellants the paper in question, but “that he showed the same to Lewis before he sold and assigned him the notes, and that he had given said/ Lewis said writing.” We .regard these facts, in connection/ with Lewis’ possession of the paper, as sufficient to prove that he bought the notes on the faith of it.
Flanagan’s evidence, as to Thomson’s statements, should have been excluded if it had been objected to. But having been read without objection, it must be regarded, in the absence of opposing evidence, as sufficient proof of the facts stated by Thompson.
As the appellants have no title to the land, the circuit judge.was right in failing to order a sale of it to'pay the notes.
But as Haynie Thomson’s deed to the appellants was executed in consideration of said notes, and for the purpose of per1 fecting their title to a third of the land, they may now accept the deed and thus acquire his interest.
*274 He holds the legal title to a third of the land, subject to be divested by a sale as directed by the will. If he had been the sole devisee of the proceeds, he might have elected to take the land instead of the proceeds. But each of his co-devisees has a right to require a sale of all the land and a distribution of the proceeds. Neither of them can acquire an indefeasible right to a third of the land without the consent of the others. (Smith vs. Claxton, 4 Madd. C. R., 484; Fletcher vs. Ashburner, 1 Bro. C. R., 497; Craig vs. Leslie, 3 Wheat, 563.) They may, by agreement, elect to keep the land, or either of them may require a sale of it, as directed by the will, and take a third of the proceeds. These rights may be exercised by the appellants, if they should accept the deed from Haynie Thomson.
As that deed was made in consideration that the appellants should pay the aforesaid notes, Lewis, if they should accept the deed, will have a lien upon their interest in the land, and an equitable right to require a sale of it and an application of a third of the proceeds to the payment of the notes.
The judgment is affirmed on the original and cross appeals.